**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS H. FUTCH,                     )
                                     )
        Plaintiff,                   )
                                     )          CIVIL ACTION
vs.                                  )
                                     )          FILE No. 1:19-cv-02625-SCJ
HIGHLANDS PLACE SHOPPING             )
CENTER, LLC,                         )
                                     )
        Defendant.                   )

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Thomas H. Futch ("Plaintiff"), and Highlands Place Shopping Center, LLC ("Defendant")(Plaintiff and Defendant shall be collectively referenced as the "Parties"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## PREAMBLE

**WHEREAS**, on June 7, 2019, Plaintiff asserted claims for injunctive relief against Defendant, based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and related claims for relief respecting the real property located at 2900 Highlands Place Parkway, Smyrna,

1

Georgia 30082 (of which 3100 Highlands Place Parkway is a part), Cobb County Property parcel number 17068800560 (The two (2) contiguous structures and improvements situated upon said real property shall be referenced herein as the "East Facility" and the "West Facility" (together, the "Facilities"), and said real property shall be referenced herein as the "Property"); and

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation; and

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendant shall be fully, forever, and finally released;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>**Attorney's Fees and Costs**</u>

1.1     The Parties shall execute this Agreement and Plaintiff's Counsel, The Law Office of Craig J. Ehrlich, LLC, shall prepare a Joint Stipulation to Approve Consent Decree and Dismiss with Prejudice ("Joint Stipulation") to be distributed to all Parties for execution. Defendant agrees to pay to Plaintiff's Counsel, within

fourteen (14) days of the entry by the Court of the Order Approving Consent Decree and Dismissal of Defendant with Prejudice (the "Order"), attorney's fees and costs of litigation in the amount of $4,400.00 (Four Thousand Four Hundred Dollars and No Cents). Said payment shall be made payable to "The Law Office of Craig J. Ehrlich, LLC IOLTA" and delivered to The Law Office of Craig J. Ehrlich, LLC, 1123 Zonolite Road, N.E., Suite 7-B, Atlanta, Georgia 30306.

1.2     Upon delivery to Plaintiff's Counsel of the fully executed Agreement, Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and to Dismiss with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

1.3     Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

1.4     Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendant has not made any representations regarding

the tax consequences of any Payment received pursuant to this Agreement.

1.5    The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

**2.**    **Alterations or Modifications to the Facilities and Property**

2.1    The Parties hereto acknowledge and stipulate that Defendant shall modify or alter the Facilities and Property in the manner specified in "Exhibit 1." The repairs or modifications identified in "Exhibit 1" shall be completed in all respects no later than twelve (12) months from the entry of the Order. The time period for completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in "Exhibit 1" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendant provides notice to Plaintiff's Counsel prior to the original completion date set forth above.

2.2    Upon completion of the alterations and modifications set forth in "Exhibit 1," Defendant shall provide written notice by certified or registered mail,

or via electronic mail, to Plaintiff's Counsel.

2.3    If the modifications or alterations described in "Exhibit 1" conflict with Georgia law, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendant shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist.  If any such alternative solution is applied by Defendant, Defendant agrees to notify Plaintiff's Counsel of the same.  It is a material provision of this Agreement that Plaintiff shall approve any alternative solution(s) prior to its (or their) implementation, and further, Plaintiff's approval of any alternative solution(s) proposed by Defendant shall not be unreasonably withheld.

2.4    The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in "Exhibit 1," or after the elapse of the twelve (12) month time period set forth in paragraph 2.1, above, whichever is sooner, Plaintiff may inspect the Facilities and Property to ensure that Defendant has completed the modifications or alterations described in "Exhibit 1." Defendant shall provide Plaintiff or his designated representative reasonable access to the Facilities and Property to verify completion of the work described in "Exhibit 1."

2.5     If an inspection contemplated herein reveals that any of the alterations or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1," Plaintiff shall have the right to enforce this Agreement pursuant to Paragraph 3, below.

2.6     It is agreed by the Parties that upon all of the modifications being completed as set forth in "Exhibit 1," the Facilities and Property will be deemed fully compliant with the ADA and 2010 ADAAG pursuant to the readily achievable standard.

**3.    Enforcement Provisions**

If Plaintiff contends that an inspection performed pursuant to Paragraph 2.4 of this Agreement reveals that any of the alterations and/or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1," Plaintiff shall provide notice to Defendant via certified mail at the address listed in Paragraph 6.1, below.  Defendant shall have one hundred and twenty (120) days after receipt of such notice to cure any alleged non-compliant alterations and modifications.  If Defendant does not cure the alleged non-compliant alterations or modifications, Plaintiff shall have the right to move this Court to enforce this agreement.

**4.    Compromise**

The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in paragraph 5.1 below). Defendant expressly denies any such liability, wrongdoing, or responsibility.

**5.    Release Given By Plaintiff in Favor of Defendant**

5.1    In exchange for the good and valuable consideration set forth herein, Plaintiff and his respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them (collectively, the "Releasing Parties"), hereby fully and finally release, acquit, satisfy, and discharge Defendant, its agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys, affiliated persons or entities, and all current and former tenants or lessees of the Facilities and/or Property (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or causes of action arising under Title III of the ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court

of law, or in any other forum, and any and all claims that could have been alleged in the Action regarding the Facilities and/or Property. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of (a) the attorney's fees and costs set forth in Paragraph 1.1, above, and (b) any attorney's fees and costs resulting from any future action taken by any of the Parties to enforce the terms of this Agreement.

5.2    As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal claims against Defendant, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3    Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

6.    **Notice**

6.1    Unless otherwise provided in this Agreement or by law, all notices or

other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

**To Plaintiff:**

The Law Office of Craig J. Ehrlich, LLC
1123 Zonolite Road, N.E. Suite 7-B
Atlanta, Georgia 30306
Fax: (855) 415-2480
craig@ehrlichlawoffice.com

**To Defendant:**

Lauren S. Antonino, Esq.
The Antonino Firm LLC
115 Strauss Lane
Atlanta, Georgia 30350
Fax: (770) 796-0263
lauren@antoninofirm.com

6.2    Any Party may change such address for the purpose of this paragraph by giving timely written notice of such change to the other Parties to this Agreement in the manner provided in this paragraph.

**7.    Free Will**

The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after

9

having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

## 8.    <u>Miscellaneous Terms and Conditions</u>

8.1    This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein

8.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3    This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

8.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction,

that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7    Plaintiff represents that, other than this Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8    The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9    In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys'

11

fees, litigation expenses, and costs.

8.10   The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

8.11   This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the state of Georgia.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

Thomas H. Futch

Date _____ 8/28/19 _____

**"DEFENDANT"**

_____

Highlands Place Shopping Center, LLC

By: _____(Print Name)

As its: _____(Title)

Date _____

12

fees, litigation expenses, and costs.

8.10   The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

8.11   This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the state of Georgia.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

**"PLAINTIFF"**

_____
Thomas H. Futch

Date _____

**"DEFENDANT"**

_____
Highlands Place Shopping Center, LLC

By: _____ (Print Name)

As its: _____ (Title)

Date _____

12

**EXHIBIT 1**

1.    The access aisle adjacent to the two (2) accessible parking spaces on the Property most proximate to Unit 4 of the West Facility will be modified to remove the flares from the existing ramp from within the boundaries of such access aisle and add a handrail on both sides of the existing ramp instead,  One of the spaces next to the ramp will be for a van. Once the work recommended by ADA Expert Peter Combs in his report, that is attached hereto and deemed part of this Exhibit 1 by the Parties (the "Combs Report"), on pages 3 and 4, is completed, the access aisle and two spaces adjoining it will be deemed to be in compliance with section 502.4 of the 2010 ADAAG standards.

2.    A table not higher than 36 (thirty-six) inches will be added under a portion of the Western Union services counter in the interior of the "EZ Trip" portion of the West Facility, with a clear path for wheelchair access as set forth on page 5 of the Combs Report.  Alternatively, an auxiliary counter nearby or a folding shelf or area next to the  counter may be used.  So long as one of the methods recommended by the Combs Report is used, the interior Western Union counter shall be deemed in compliance with section 904.4.1 of the 2010 ADAAG

1

standards.

3.  Defendant shall notify its tenant occupying "EZ Trip" portion of the West Facility in writing that the portion of the primary (non-Western Union) sales and services counter in the in the "EZ Trip" portion of the Facility that is 36" (thirty-six) inches from the finished floor is to be cleared of inventory and other items that prohibit its use so that it is accessible and usable by disabled patrons, and shall remain as such. Delivery of written notice by Defendant to its tenant of the requirements contained in this Item #3 of Exhibit 1 to the Parties Consent Decree shall be deemed full compliance with this Item #3.

4.  The lavatories and/or sinks in the restrooms in the "EZ Trip" portion of the West Facility will be modified to have exposed pipes and surfaces thereunder insulated or reconfigured to protect against contact with the skin, in compliance with section 606.5 of the 2010 ADAAG standards, as outlined in the Combs Report.

5.  The toilet paper dispensers in the restrooms in the "EZ Trip" portion of the West Facility will be repositioned within the permissible reach ranges set forth in section 604.7 of the 2010 ADAAG standards, as outlined in the Combs Report.

2

# Expert Report

A report covering the Americans with Disability Act (ADA)
alleged violations that were listed in the complaint:

Futch v. Highlands Place Shopping Center

At:
3100 Highlands Pkwy SE
Smyrna, GA 30082



BY:
Peter Combs, Architect

Inspection date:
November 19, 2018

# COMBS
## &ASSOCIATES
**Architect Expert Witness**
PO Box 706
Leesburg, AL 35983
404-790-1140

## **The relevant documents**

In this response to the Plaintiff's Complaint I will refer to the following documents:

ADA -91---  The 1991 standards of The Americans with Disability Act became
mandatory on January 1, 1991 The mandatory standards were revised
and updated in 2010 and that edition became mandatory on March 15,
2012

ADA -10---  The 2010 standards of Americans with Disability Act became mandatory
on March 15, 2012. All facilities that meet the 1991 Standards have
"Safe Harbor" from the 2010 Standards. All renovations, new
construction and readily achievable barrier removal, not already
performed under the 1991 standards must comply with 2010 standards.
.
**ADA –GSB** -The Americans with Disabilities Act Guide for Small Businesses
by the U.S. department of Justice, Civil Rights Division.

## **The alleged violations in the complaint are listed below:**

**Complaints Numbered a-i, a-ii, a-iii, & a-iv:  All of these complaints claim that
the ADA parking and assess aisle on the Western side of the property are not
compliant.**

These complaints have no bases. This was an ADA parking area, but it has long since
been marked out and the ADA parking was relocated near the midpoint of the center
of the shopping center.

**Complaints Numbered a-v, & a-vi: The curb ramp near Unit #4 protrudes into
the access aisle and the two parking spaces.**

This is correct.  The ramp does protrude into the access aisle, but not into the parking
spaces. The few inches where the flares cross the line are in an area that is not in the
parking space because the sign posts keep cars from parking there. The ADA parking
spaces and access aisles must be nearly level so ramps are not allowed within their
boundaries.



# ADA requirements: accessible parking spaces & access aisles



Each space must have a sign that is visible with the bottom a minimum 60" above grade. The van space sign must indicate that it is a "Van" Space

Exception: If the access aisle is 96" wide then the van space can be 96" wide.

Curb ramps CANNOT intrude into access aisle.

The slope in any direction must not exceed 1" rise in a 48" horizontal run

Access aisle must be marked as a no parking zone.

Min. 132" Van space | 60" Min. | Min. 96"

**Advisory 502.3.4 Location.** Wheelchair lifts typically are installed on the passenger side of vans. Many drivers, especially those who operate vans, find it more difficult to back into parking spaces than to back out into comparatively unrestricted vehicular lanes. For this reason, where a van and car share an access aisle, consider locating the van space so that the access aisle is on the passenger side of the van space.

Suggestion: Remove the ramp flares, and install handrails on both sides of the existing ramp. On each side of the ramp have a 5' wide access aisle with a parking space beyond. One of the parking spaces must be a "Van" space. This new lay-out will save the shopping center from losing parking spaces.



Remove ramp flares   Add handrails   Curb   Ramp up

11' Van | 5' | 3' | 5' | 8'

*505.10.1 Top and Bottom Extension at Ramps. Ramp handrails shall extend horizontally above the landing for 12 inches (305 mm) minimum beyond the top and bottom of ramps. Extensions shall return to a wall, guard, or the landing surface, or shall be continuous to the handrail of an adjacent ramp run.*



Figure 505.10.1
Top and Bottom Handrail Extension at Ramps

*405.9.2 Curb or Barrier. A curb or barrier shall be provided that prevents the passage of a 4 inch (100 mm) diameter sphere, where any portion of the sphere is within 4 inches (100 mm) of the finish floor or ground surface.*



Figure 405.9.2
Curb or Barrier Edge Protection

**Complaint Number b-i: The service counters lack any portion that is an accessible 36" from the floor.**



This counter has the required lower section - it just needs to be cleaned out so it is usable.



This counter needs a small table or shelf at 36" high, but it must be arranged so the parallel approach is still possible.

**ADA-GSB**   **Page 11:** *In addition to having a maximum height of 36 inches, all accessible sales and service counters must have a clear floor space in front of the accessible surface that permits a customer using a wheelchair to pull alongside. This space is at least 30 inches by 48 inches and may be parallel or perpendicular to the counter.*

*It is also possible to provide an auxiliary counter nearby or to use a folding shelf or area next to the counter, if doing so is readily achievable.*

**Complaint Number b-ii: The EZ-Trip restrooms do not have clearance under the lavatories.**

 

The requirement is 27" of clearance under the sink. I believe that the existing 26 ½" can be called as being within "construction tolerance" and would be difficult and expensive to change for very little gain. It could also be said that due to the cost it would not be readily achievable to rise it only ½"

**Compliant Number b-iii: The under sink pipes are not insulated.**

This is correct. The pipes need to be insulated.

**Compliant Number b- iv: The toilet grab bars do not comply.**

This complaint has no bases. The facility was built before the 2010 Standards were in effect and was constructed in compliance with the 1991 Standards and therefore has "Safe Harbor" from being required to change.




The drawing from the 1991 Standards show that the grab bar behind the toilet was allowed to be smaller than they are in the 2010 Standards.

**Complaint Number b-v: The toilet paper dispensers are not located properly.**

This is correct. The dispensers were located too far from the front edge of the toilet. They are required to be within 7"-9" from the front edge to the centerline.



Paper dispenser location

I reserve the right to amend this report if I become aware of new information or decide there is a clearer way to present the information put forth in this report.

Respectfully submitted by,

Peter A. Combs, RA